IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| IN RE | ) ) | |
| MARK C. JOHNSON | ) ) | BANRKUPTCY NO. 10-16789-RGM |
| DEBTOR | ) ) ) | CHAPTER 13 |

**DEBTOR'S RESPONSE TO BANK OF AMERICA'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

**Introduction**

**COME NOW** Mark C. Johnson ("Debtor"), by and through his attorney of record, and responds to Bank of America's ("BAC") Objection to Confirmation of his Chapter 13 Plan. The debtor moves that this court overrule BAC's objection and confirm the Plan once it has been amended to address the arrearages. In support, the debtor offers as follows:

**FACTS**

1. The Debtor filed a Voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code on August 12, 2010.

2. The Chapter 13 Plan filed by the Debtor includes language which provides that confirmation of the Plan shall impose affirmative duties and legal obligations on the holders and/or the servicers of any claims secured by liens, mortgages, and/or deeds of trust on the principal residences of the Debtor as provided for by 11 USC Section 524(i) and provides that Section 524(i) applies to this Plan.

3. Bank of America has filed an objection to confirmation. The objection is that the plan improperly/impermissibly modifies the terms of the loan or modifies the rights of the Creditor(s) under the Note(s) and Deed(s) of Trust held by each Creditor

4.      Neither the United States Trustee nor the Chapter 13 Trustee have objected to confirmation of the Debtor's Plan.

## BACKGROUND

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 created a new section--Section 524(i), which reads:

> The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan **in the manner required by the plan** (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments **in the manner required by the plan** caused material injury to the debtor.

Since the legislation of the new section 524(i), for debtor's counsel to not provide for application of payments by the mortgage servicer in her clients' plans pursuant to Section 524(i) would arguably be malpractice. Section 524(i) is not self-executing. The debtor must include the provisions for the application of the mortgage payments in the plan in a particular manner. Specifically, the proposed language provides that the payments will be applied and credited to the debtor's mortgage account as if the account were current and no pre-petition default existed on the petition date.

> Section 524(i) is a consumer protection remedy added to the bankruptcy code that provides for sanctions against a creditor for violation of the discharge injunction. Specifically, the section provides that the willful failure of a creditor to credit payments received under the terms of the confirmed plan shall constitute a violation of the discharge injunction if the failure causes material injury to the debtor. The only statutory exceptions are when the order confirming plan has been revoked, the plan is in default, or the creditor has not received payments required by the plan.[1]

---

[1] Miranda, Sarah D., and Vonnegut, Joseph J., "*Keep An Eye on Section 524(i) While Servicing Defaulting Mortgages*", SERVICING MANAGEMENT (May 2007). Miranda's article is attached as Exhibit B and incorporated herein by reference.

In 2006, Ameriquest, a mortgage servicer, was sanctioned by a bankruptcy court for inaccurate accounting. The problem still exists in 2010, the very problem that Section 524(i) attempts to address. In *Nosek v. Ameriquest Mortgage Company*, an adversarial proceeding arising out of *In re Nosek,* 2006 U.S. Dist. LEXIS 1279 (Bankr. D. Mass. 2006), 2006 WL 682581 (Bkrtcy D. Mass), the bankruptcy court was outraged by the mortgage company's inability to provide an accurate accounting of Nosek's payments while in her Chapter 13 bankruptcy. The Court found that Ameriquest's accounting practices were wholly unacceptable for a national mortgage lender and awarded $500,000.00 under Section 105(a). The Court noted that Ameriquest admitted that "without question Chapter 13 serve as a comprehensive statutory scheme for treatment of home mortgage claims in Chapter 13 cases." *Nosek* at *5. The Court found it unpersuasive that Ameriquest should not have to apply payments in a different manner from other mortgagees and pointed out that

> …the Bankruptcy Code is not a cafeteria, lenders do not decide which of its provisions apply to them. Once a debtor files for Chapter 13, the Bankruptcy Code and only the Bankruptcy Code, dictates the protections (such as the preemption of state law remedies) afforded to the lender and the obligations (such as separate accounting for pre-and-post petition payments) required of them.

*Nosek* at *6

The requirements of the Bankruptcy Code, such as compliance with the automatic stay and the deadlines for proofs of claim and objections to plan confirmation, increase the burden on mortgage servicers to act promptly and correctly. Bankruptcy courts have just now begun to address the issues and highlight the failures of mortgage servicers to provide accurate information to debtors and to comply with the Bankruptcy Code and Bankruptcy Rules.

However the appellate court held in *In re Nosek,* 544 F.3d 34 (1st Cir. 2008), that 524(i) is not self executing. In that case, the United States Court of Appeals vacated the district court's

judgment affirming the bankruptcy court's judgment in the adversary proceeding and remanded that proceeding to the bankruptcy court for dismissal. The Court specifically held that:

> …there was no language in Nosek's Plan, as it was confirmed, or in § 1322(b), that addressed how Ameriquest was to apply the payments it received from Nosek or from the trustee. Under such circumstances, the Plan would have to be amended to prescribe the accounting practices necessary to protect- Nosek's right to cure before Ameriquest could be sanctioned for a violation of an order of the bankruptcy court. [16] In the absence of such specificity, there was no violation of § 1322(b) or the Plan and therefore no basis upon which to award Nosek damages under § 105(a).

*Nosek* at *49

The mortgage servicing industry is very aware of the implications of the enactment of the consumer protection remedy found in Section 524(i). Not only have the creditors taken notice of the requirements of 524(i), acknowledging that they have an obligation to comply with the provision, they also understand that doing so requires more than they have been doing, or that many of them currently have the ability to do. It appears that the widespread mortgage servicing problems that prompted 524(i) were addressed by a meeting of mortgage servicers in March of 2006, and a program or service called PACT has been designed to assist mortgage servicers in attempting to comply with 524(i)'s provisions. See www.mypact.info.

In a another recent article on the United State Foreclosure Network's website, author Linda St. Pierre points out Section 524(i)'s impact on the mortgage servicing industry. She warns that *In re Nosek,* 2006 U.S. Dist. LEXIS 1279 (Bankr. D. Mass. 2006) means that a willful violation of Section 524(i) means sanctions for mortgage servicers who cannot or willful correctly account for and distinguish between pre- and post-petition payments made by the Debtor, as well as being unable to credit the debtors' accounts from the suspense account. A copy of the articled is attached hereto as Exhibit A. With *In re Nosek,* 544 F.3d 34 (1st Cir. 2008) allowing the creditor to escape punishment where there is lack of direction in terms of

application of payment, it is of course in the creditor's interest that such language be excluded so that it could go on about its usual practices without repercussion.

## ARGUMENT

### *The <u>Debtor</u> Files A Plan; Not the Creditor*.

The Code is clear regarding the requirements Chapter 13 Plans must meet to be confirmed. The first, and most basic of these is found in 11 U.S.C. § 1321, the shortest section of Chapter 13 (if not the entire Code). It states: **"The Debtor shall file a plan."**

It is important to note that, pursuant to this section, the Debtor and only the Debtor has the right to file a Plan. In addition, Section 1323(a) provides that "the debtor may modify the plan at any time before confirmation; but may not modify the plan so that the plan as modified fails to meet the requirements of Section 1322 of this title." The exclusive right to file and to modify a Plan necessarily implies the right, consistent with the requirements of Section 1322 of the Code, to determine its contents. Should the Court, Creditor or Trustee be able to dictate and limit Plan contents, they, rather than the Debtor, file the Plan.

### *B. The Proposed Plan Is Consistent With The Provisions Of 11 U.S.C. § 1322*.

11 U.S.C. § 1322 specifically states what the Plan shall and may contain. It does not include specific language that must be used to implement its requirements, instead generally stating that the Plan shall:

> (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;
>
> (3) if the plan classifies claims, provide the same treatment for each claim within a particular class; and

(4) notwithstanding any other provision of this section, a plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

It also provides that the Plan may:

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity;

(10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims; and

(11) include any other appropriate provision not inconsistent with this title.

Of particular importance to this case is §1322(b)(11), which states that a Debtor's Chapter 13 Plan "may include any other appropriate provision not inconsistent with this title." This language is made as broad as possible: "*Any* other appropriate provision not inconsistent with this title" is specifically allowed. The only restrictions on Plan language are that its provisions be appropriate and not inconsistent with Title 11. Such provisions may be included in a Plan in all cases. To do otherwise invites the Debtor's counsel to provide the Debtor with appropriate notice provisions on how to contact the Professional Liability Fund. It is hard to see how a plan provision that adopts another section of the same title would violate §1322(b)(11).

### C. The Plan Complies With Confirmation Requirements Of 11 U.S.C. §1325.

Section 1325 *requires* confirmation of a Plan if the requirements set forth are met. Section 1325 states that:

> (a) Except as provided in subsection (b) [2], the court **shall** confirm a plan if—
>
> (1) The plan complies with the provisions of this chapter and with the other applicable provisions of this title;
>
> (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
>
> …
>
> (6) the debtor will be able to make all payments under the plan and to comply with the plan;
>
> (7) the action of the debtor in filing the petition was in good faith;
>
> (8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or

---

11 Subsection (b) deals with various objections to the Plan, definitions of "disposable income," and implementation of the results of Form B22C.

administrative order, or by statute, to pay such domestic support obligation; and

(9) the debtor has filed all applicable Federal, State, and local tax returns as required by section 1328….

(*Emphasis added*.)

Section 1325(1) states that, "[T]he Court *shall* confirm a plan if the plan complies with the provisions of this chapter and with the other applicable provisions of this title." (Emphasis added). This language requires the Court to confirm a Plan if it meets the requirements of Chapter 13 and Title 11. For example, if pursuant to § 1322(b)(11) a Debtor includes "appropriate provision[s] not inconsistent with this title," the Court must approve the Debtor's Plan.

### D. Sections 1306 and 1327(b) Recognize And Contemplate Plans Containing Different Requirements.

Section 1306 of the Bankruptcy Code deals with what constitutes "property of the estate" in Chapter 13 cases. There are two ways of dealing with Debtor property after confirmation: either it can remain in possession of the debtor until discharge, dismissal or conversion, or it can be paid, held or distributed to the Chapter 13 Trustee or creditors until discharge. For example, future income of the Debtor is, pursuant to §1306(a)(2), property of the estate and, under §1306(b), to remain in the Debtor's possession after confirmation. Section 1306(b), however, states that the Plan can provide for different treatment, such as dedicating future income to plan payments. But it need not do so. §1306(b) in no way restricts the Plan provisions that would provide for differing treatment of property of the estate.

### E. The Special Protections of Section 524(i) Are Not Provided For In most Form Plans.

In 2005, BAPCPA added new Section 524(i) to the Code. However, most Model or Form Plans fail to make any provision for the terms and conditions under which those payments should

be credited, having been adopted by Courts years in advance of the 2005 Act. Debtor seeks to add this language to the Chapter 13 Plan at issue here, via 11 USC 1322(b)(11).

The Code recognizes explicitly in §1322(b)(11) that a Debtor may include in a Chapter 13 Plan "*any* appropriate provision not inconsistent with this title." Yet, in a creditor's world, the Plan would severely restrict this language. Holding out §1322(b)(2) and (b)(5) as somehow exempting the addition of legacy charges and having them remain outside judicial control, oversight, supervision and approval subverts the reorganization process. Section 524(i) is limited to payments "received under a plan confirmed under this title." A plan devoid of such language will leave the debtor with a right without a remedy. The removal of control of its cases and the enforcement of its orders from the Bankruptcy Court is a serious matter. Debtor certainly wish that any stay violation or subsequent discharge violation be heard by this Court, and, more importantly, since a Chapter 13 case is never final until the case is closed upon entry of the discharge order the need for pure core jurisdiction is of paramount importance.

Judge Mitchell in Russell recognized the need for such language in some capacity when he stated that "…perhaps, the judges of the Eastern and Western District of Virginia should consider whether some, or some variant, of the provisions that debtor's counsel has proposed in Section 11(III) of this plan ought to be incorporated in the uniform plan." Judge Mitchell's concern that But it would utterly defeat the purpose of a uniform plan, and impose a wholly unreasonable burden on mortgage servicers, if they had to comply with potentially dozens of variations as each law firm crafted what it believed to be the ideal set of best practices for mortgage loan administration in chapter 13.

### F. *The Specific Objections of this Creditor*

(1) This paragraph and those that follow flesh out what it means to cure a mortgage

default.  They are intended to help prevent problems arising after completion of a chapter 13 plan in which a creditor alleges that the amount paid through the plan did not cure the default or that the debtor failed to maintain postpetition payments.  To avoid any ambiguity when later attempting to prove of a violation of § 524(i), this paragraph specifies how ongoing postpetition payments received by the mortgage lender are to be credited under the terms of the plan

There is a distinction between the loan being deemed cured and actually being cured.  The former is defined by the American Heritage Dictionary as "being regarded as, or considered."  The plan language does not state that the debt will actually be paid on discharge, only that the loan will no longer be treated as if in default.

The plan provision is present in order to obtain the benefit of 11 USC 524(i).  Section 524(i) was drafted in 2001 in response to decisions in which courts questioned whether they had the ability to remedy a creditor's failure to creditor payments properly. For example, it provided a remedy that the 11th Circuit found missing in *Telfair v First Union Mortgage*, 216 F.3d 1333 (11th Cir. 2000).  In *Telfair*, the Chapter 13 debtor challenged a creditor's application of plan payments to charges (i.e. corporate advances, suspense accounts) not contemplated in the plan (or in the note and mortgage).  The court stated that if the mortgage servicer could subvert the terms of the Code and of a confirmed plan simply by adding such charges to loan as and when it deemed such action appropriate, then the cure of the mortgage default provided for by Chapter 13 would be meaningless.

Further, to allow the servicer to add legacy charges and junk fees and seek payment by either a motion for relief from the automatic stay or by amending its Proof of Claim with impunity would render the court's own rules impotent.  It is also important to note that while the debtor must wait until the discharge before pursuing a 524(i) claim, it is the pre-discharge actions

of the mortgage servicer occurring during the Chapter 13 case that provide the grounds for the discharge injunction violation.  Section 524(i) also establishes for the first time that there can be a discharge violation even without an attempt to collect on a dischargeable debt.  Thus, 524(i) clearly trumps 1322(b)(2) and enhances 1322(b)(5).

      Prior to the enactment of 524(i), servicers argued that since a long-term mortgage is not discharged under 1322(b)(5), there could be no discharge violation for attempting to collect the fees and charges.  The House Report on the Bankruptcy Reform Act of 1994, which played a part in the drafting of 524(i), stated:  "It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." HR Rep. No. 835, 103d Cong., 2d Sess 55 (1994). It is noteworthy that the FHA Instrument contains in ¶3 of the mortgage, specific directions how the payments are to be applied.   This Section mandates how payments are to be applied and is not inconsistent with 524(i) or debtor's plan language implementing 524(i).  Any charges that are made during the pendency of the bankruptcy are subject to judicial oversight by the bankruptcy court and such oversight does not violate 11 USC 1322(b)(2).   Lawful charges are allowed and contemplated under the Bankruptcy Code and the Federal Bankruptcy Rules of Civil Procedure, specifically, Rule 2016, provide a mechanism which does not offend the prohibition of 1322(b)(2).

   Often, a problem occurs because mortgage servicers use the total amount of escrow arrears in annually reevaluating the borrower's escrow account. This annual review is then used as the basis for calculating the borrower's new escrow payment going forward during the plan.  However, in most cases prepetition escrow arrears have already been included in the claim as arrears and are being paid through the chapter 13 plan.  As a result, this practice can lead to double or sometimes triple payments by the debtor.

Consistent with caselaw interpreting § 1325(b)(5), this requires the lender to apply postpetition ongoing payments as if no prepetition default occurred. *See, In re Wines*, 239 B.R. 703 (Bankr. D.N.J. 1999); *In re Rathe*, 114 B.R. 253 (Bankr. D. Idaho 1990). The House Report to the Bankruptcy Reform Act of 1994 reaffirms that this is the intent of Congress. *See* H.R. Rep. No. 835, 103d Cong., 2d Sess. 55 (1994) reprinted in 1994 U.S.C.C.A.N. 3340 ("It is the Committee's intention that a cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred.").

The purpose of debtor's plan language is to prevent miscellaneous and other late fees and charges resulting from the creditor's action of leaving trustee payments in suspense and forbearance accounts and not timely applying to debtors' outstanding loan balances. This is also the express intent of the framers of BAPCPA.

The Fannie Mae/Freddie Mac uniform security instruments contain a payment application provision in Section 2 which mandates how payments are to be applied. *See, e.g.,* Fannie Mae/Freddie Mac Uniform Instruments, First Lien Security Instruments, at *http://www.freddiemac.com/uniform/unifsecurity.html*.

(2) The Truth in Lending Act (TILA) controls the disclosure requirements for interest rate and payment changes on adjustable rate mortgages.[3]

Creditor might argue that compliance with TILA and the Real Estate Settlement Procedures Act (RESPA) is not required because the debtors are in bankruptcy because these federal statutes are "preempted" by the Bankruptcy Code, relying on decisions such as *Walls v.*

---

3 See NCLC Truth in Lending, § 4.9.3 (5th ed. 2003 and supp.).

*Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002). However, Creditor must comply with federal statutes unless there is some unavoidable conflict with the Bankruptcy Code.[4]

In implementing RESPA, HUD promulgated a regulation providing that servicers are not required to provide borrowers who are in bankruptcy with annual escrow account statements.[5] This exemption is limited to the requirement of providing the annual escrow statement and does not eliminate the servicer's duty to conduct the annual escrow account analysis. In addition, this exemption is arguably not applicable once a chapter 13 plan is confirmed because the regulation requires the servicer to resume providing account statements when the account is subsequently "reinstated or otherwise becomes current," which is effectively the result of plan confirmation.[6]

This paragraph provision is also consistent with the Fannie Mae/Freddie Mac uniform security instruments, which incorporate in Section 3 the RESPA definitions for these terms. [7] A servicer is required to notify borrowers of escrow account shortages and deficiencies because no bankruptcy exemption exists for that requirement under 24 C.F.R. § 3500.17(f)(5). See *Chase Manhattan Mortg. Corp. v. Padgett*, 268 B.R. 309 (S.D. Fla. 2001); NCLC'S FORECLOSURES, § 5.3.4.5 (2005).

(3) Creditor argues that this provision impermissibly modifies Creditor's rights under Section 1322(b); but does not provide specifics. Debtors disagree with Creditors assessment of this paragraph.

---

4 See Randolph v. IMBS, Inc., 368 F.3d. 726 (7th Cir. 2004) (no irreconcilable conflict exists between FDCPA and Bankruptcy Code, so both statutes can be enforced simultaneously)

5 . See 24 C.F.R. § 3500.17(i)(2

6 See *In re Wines*, 239 B.R. 703 (Bankr. D.N.J. 1999) (post-petition mortgage debt treated like a current mortgage and consists of those payments which come due after the bankruptcy petition is filed

7 See, e.g., Fannie Mae/Freddie Mac Uniform Instruments, First Lien Security Instruments, at *http://www.freddiemac.com/uniform/unifsecurity.html.*

(4) Creditor objects to this provision as limiting what Creditor can recover as a post petition arrearage. The plan provision allows for payment **when approved by court** order of any fees that are reasonable and necessary.

(5) Creditors claim that this provision amounts to an impermissible modification of its claim in violation of § 1322(b)(2), namely with respect to the clause found in the lender's security agreement permitting it to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument.[8]   However, consistent with the opinion in *Mann v. Chase Manhattan Mortgage Corp*., 316 F.3d 1 (1st Cir. 2003), this provision does not expressly prohibit the lender from tracking in its internal bookkeeping charges it believes may be assessed to the debtor's account, nor does it prevent the debtor from challenging the assessment of these fees.  The provision simply recognizes that any attempt to collect such fees during the case would violate the automatic stay, and after the case would violate the discharge injunction and § 524(i) if the debtor successfully completes the case and obtains a discharge.

## CONCLUSION

Local Rules are designed to help implement the Code. They often help to fill in gaps, and codify local practice. However, they cannot contain provisions or requirements that contravene the Code, or restrict its application. Local Rule 3015–2(a) and the Form Plan should not be allowed to do that.  Debtors believe that they have complied with the notice provisions of the Local Rule and that it has not been violated by their proposed Plan, but in the event the

---

[8] *See,e.g*., Fannie Mae/Freddie Mac Uniform Instruments, First Lien Security Instruments, at
 http://www.freddiemac.com/uniform/unifsecurity.html

Bankruptcy Court holds otherwise, the Code and Rules must take precedence over the Local Rule.

The Form Plan fails to address numerous Code provisions, many of which Debtors have not chosen to add at this time. Debtors believe that the only way the Form Plan can be saved from violating the Code and Rules would be to liberally construe the notice provisions of the Form Plan in such a way as to allow both the additions proposed by the Debtors in this plan, and future plans with more expansive changes to the Form Plan, all with proper notice, of course, to the Chapter 13 trustee and all interested parties.

While Local Rule 3015–2(a) and the Form Plan reflect an understandable attempt to require uniformity to reduce review time by the Court, Chapter 13 Trustees and creditors, Debtors' particular circumstances do not always fall within a cookie-cutter Plan. Imposing the use of a Form Plan that abridges Debtors' substantive rights is inconsistent with the Code, and places additional burdens on Debtors, and renders the Local Rule invalid under Rule 9029(a).

The specific language used by the Debtors in the Plan at issue complies and is consistent with the Code, and is designed to deal with circumstances that frequently arise with creditors, or to address recent decisions interpreting the Code.

Wherefore, Debtors pray that the Court overrule Bank of America's Objection to the Debtor's Chapter 13 Plan, and confirm the Plan once it has been amended to address the arrearages.

Respectfully Submitted,
MARK C. JOHNSON

                                              **/s/ Jeremy C. Huang**
Jeremy C. Huang
Rowe Barnett, PLLC
5906 Hubbard Dr.
Rockville, MD 20852
301-770-4710 (p) / 301-770-4711 (f)
jhuang@rowepllc.com

CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that a true copy of the foregoing Summons and the Complaint was served certified mail postage prepaid with return receipt, and/or via hand delivery, and/or ECF system on this 19th day of October, 2010:

Bank of America, N.A.
P.O. Box 26012, NC4-105-02-99
Greensboro, North Carolina, 27420

Bank of America Corporation
c/o Brian Moynihan
100 North Tryon Street
Charlotte, North Carolina 28202

Eric David White, Esq.
Samuel White, P.C.
1804 Staples Mills Road
Suite 200
Richmond, VA 23230

Thomas P. Gorman
Chapter 13 Trustee
300 N. Washington St., Suite 400
Alexandria, VA 22314

Office of the United States Trustee
115 South Union Street, Plaza Level
Suite 210
Alexandria, VA 22314